WOOD BALMFORTH LLC
Mary Anne Q. Wood (#3539)
Stephen Q. Wood (#12403)
60 E. South Temple, Suite 500
Salt Lake City, Utah  84111
Telephone:  (801) 366-6060
mawood@woodbalmforth.com
swood@woodbalmforth.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVEEN TREHAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MEDICONNECT GLOBAL, INC. a Delaware corporation, AMY ANDERSON, an individual; and VERISK HEALTH, INC., a Massachusetts corporation,<br><br>Defendants. | **COMPLAINT<br>AND JURY DEMAND**<br><br><br>Case No. 2:13-cv-00921-PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Naveen Trehan complains and alleges against Defendants MediConnect Global, Inc., Amy Anderson, and Verisk Health, Inc., as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Naveen Trehan resides and is domiciled in the state of New York.

2. Defendant MediConnect Global, Inc. ("MediConnect") is a Delaware corporation with a principal place of business in Salt Lake County, Utah.

3. On information and belief, Defendant Amy Anderson resides and is domiciled in Salt Lake County, Utah.

4. Defendant Verisk Health, Inc. is a Massachusetts corporation with a principal place of business in Salt Lake County, Utah, and is successor-in-interest to MediConnect Global, Inc.

5. Jurisdiction is proper because there exists both a federal question and complete diversity of citizenship with an amount in controversy exceeding $75,000. *See* 28 U.S.C. §§ 331 and 1332(a).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that all Defendants are citizens of Utah.

## GENERAL ALLEGATIONS

7. In 2004, Mr. Trehan founded Globerian Inc. ("Globerian") to provide healthcare professionals in the United States with billing services performed by employees located in India.

8. Mr. Trehan and Ms. Anderson were the primary initial shareholders of Globerian.

9. On or about June 29, 2006, Mr. Trehan and Ms. Anderson formed MediConnect.

10. On June 30, 2006, MediConnect acquired Globerian. MediConnect's acquisition of Globerian resulted in Mr. Trehan and members of his family owning approximately 30% of MediConnect.

11. Mr. Trehan personally owned approximately 20% of MediConnect.

12. Ms. Anderson also acquired an ownership interest in MediConnect and thereafter became the president of MediConnect.

13. In July 2009, Mr. Trehan became MediConnect's Chief Strategic Officer, and Ms. Anderson became MediConnect's Chief Executive Officer.

14. On March 25, 2010, Mr. Trehan resigned his corporate position with MediConnect.

15. In October 2010, MediConnect, through Ms. Anderson, negotiated a buyout of Mr. Trehan's and his family members' shares in MediConnect (the "Shares").

16. A material issue raised in these negotiations was whether MediConnect was aware of any interest on the part of any third parties in purchasing, merging with, or otherwise acquiring all or part of MediConnect. This information was material to Mr. Trehan's decision to sell his Shares, and was also essential to accurately value Mr. Trehan's Shares, should he choose to sell them.

17. Consequently, Mr. Trehan asked Ms. Anderson whether anyone had expressed any interest in acquiring, merging, or significantly investing in MediConnect since February 25, 2010.

18. On or about October 13, 2010, Ms. Anderson responded that:

   a. MediConnect received unspecified calls from equity funds but had not engaged in conversations with those funds other than to let them know that MediConnect was focused on growing the business and not seeking transactions at that time.

   b. Mr. Rishav Gupta inquired about buying the company in June 2010. Ms. Anderson indicated that MediConnect was not looking to sell but would entertain a serious offer. Mr. Gupta never provided a follow-up offer.

       c.     Mr. Alan Hall of Mercato Ventures spoke with Ms. Anderson about investing capital, but no further discussions took place.

19. Ms. Anderson disclosed no other expressions of interest in acquisition of, merger with, or investment in MediConnect.

20. On October 15, 2010, based on Ms. Anderson and MediConnect's representations and disclosures, Mr. Trehan agreed to a buyout of the Shares for $9,184,000.

21. In exchange for Mr. Trehan's approximate 20% interest in MediConnect, Mr. Trehan received $6,606,084 and ownership of Globerian India, an entity jointly owned by Globerian, Inc. and Mr. Trehan (the "Trehan Buyout").

22. On information and belief, contrary to Ms. Anderson's and MediConnect's representations, Verisk Analytics had expressed an interest in acquiring, merging, or investing in MediConnect to Ms. Anderson and/or MediConnect on or before October 15, 2010.

23. On or about March 23, 2012, Verisk Analytics purchased MediConnect for $348.6 million.

24. On March 26, 2012, Frank Coyne, Verisk Analytic's CEO, stated that Verisk Analytics and MediConnect "have had a business relationship for many years" prior to the acquisition.

25. Indeed, Verisk Analytics and MediConnect had a close working relationship since at least March 2003 when Insurance Services Office, Inc., Verisk Analytics' predecessor, entered into a business agreement with MediConnect.

26. On the same March 26, 2012, conference call, Scott Stephenson, Verisk Analytics' President and COO noted that the MediConnect acquisition was a "strategically


important transaction, one that was developed by [the Verisk Analytics] team over an extended time period."

27. In March 2011, Verisk Analytics' CFO noted that the largest acquisition undertaken by that entity was for $360 million. The referenced acquisition appears, however, to point to the MediConnect acquisition consummated the following year. This is so because the MediConnect acquisition is the only Verisk Analytics acquisition that comes close to $360 million over Verisk Analytics' four-year acquisition history.

28. Neither Ms. Anderson nor MediConnect disclosed Verisk Analytics' interest in MediConnect prior to the Trehan Buyout.

29. Ms. Anderson and MediConnect's failure to disclose Verisk Analytics' interest was done knowingly, or in the alternative, negligently.

30. If Ms. Anderson or MediConnect had disclosed Verisk Analytics' interest in acquiring, merging, or investing in MediConnect to Mr. Trehan, Mr. Trehan would not have sold his interest for $6,606,084.

31. In fact, Mr. Trehan would have either waited for the consummation of any possible deal with Verisk Analytics, or substantially increased his buyout price.

32. Consequently, Ms. Anderson and MediConnect's failure to disclose to Mr. Trehan Verisk Analytics' interest in MediConnect personally injured Mr. Tehran in an amount of $64 million.

33. In 2013, MediConnect changed its name to Verisk Health, Inc.

## FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty)

34. Plaintiff incorporates by this reference all other allegations set forth herein.

35. MediConnect and Ms. Anderson, as a co-owner and an officer of MediConnect, owed fiduciary duties of care, candor, honesty, and loyalty to Mr. Trehan.

36. Verisk Analytics' interest in acquiring, merging with, or investing in MediConnect was material information to the Trehan Buyout.

37. Ms. Anderson and MediConnect failed to deal fairly with and breached their fiduciary duties to Mr. Trehan by failing to disclose Verisk Analytics' interest in acquiring, merging with, or investing in MediConnect prior to consummating the Trehan Buyout.

38. Ms. Anderson and MediConnect withheld that information to increase their own net proceeds from the acquisition, while cheating Mr. Trehan of a fair price for his 30 percent share of the company.

39. Ms. Anderson and MediConnect's breaches of their fiduciary duties to Mr. Trehan harmed Mr. Trehan in an amount of $64 million.

## SECOND CAUSE OF ACTION
(Fraud)

40. Plaintiff incorporates by this reference all other allegations set forth herein.

41. On October 13, 2010, Ms. Anderson and MediConnect represented to Mr. Trehan that MediConnect had received no expressions of interest in acquisition, merger, or significant investment, except from unspecified equity funds, Mr. Gupta, and Mr. Hall, as explained above.

42. Ms. Anderson's and MediConnect's representations to Mr. Trehan were false in that they omitted Verisk Analytics' interest in MediConnect.

43. As noted above, prior to October 15, 2010, Verisk Analytics expressed an interest in a potential acquisition, merger, or significant investment in MediConnect.

44.     As fiduciaries, Ms. Anderson and MedicConnect had a duty to disclose this clearly material information to Mr. Trehan even if he had not asked to be informed about any interest in MediConnect, and that failure to disclose, by itself, constitutes fraud.

45.     However, Ms. Anderson and MediConnect affirmatively misrepresented the expressions of interest in MediConnect, giving rise to a cause of action for fraud, even if they had not been fiduciaries.

46.     Ms. Anderson and MediConnect knew that their representations to Mr. Trehan were false or made with reckless indifference to the truth.

47.     Ms. Anderson and MediConnect provided false information to Mr. Trehan for the purpose of inducing him to agree to the Trehan Buyout on artificially low and unfair terms.

48.     Mr. Trehan justifiably relied on Ms. Anderson and MediConnect's representations and thereby agreed to an unfairly low buyout.

49.     As a result of his reliance, Mr. Trehan was thereby harmed in an amount of approximately $64 million.

## THIRD CAUSE OF ACTION
(Negligent Misrepresentation)

50.     Plaintiff incorporates by this reference all other allegations set forth herein.

51.     Ms. Anderson and MediConnect owed Mr. Trehan the duty to investigate and disclose whether Verisk Analytics had expressed an interest in acquiring, merging with, or investing in MediConnect, prior to October 15, 2010.

52.     Ms. Anderson and MediConnect failed to disclose to Mr. Trehan that Verisk had expressed an interest in acquiring, merging with, or investing in MediConnect.

53. If this failure was not intentional, Ms. Anderson and MediConnect acted negligently by failing to discover and disclose Verisk Analytics' interest in acquiring, merging with, or investing in MediConnect.

54. Ms. Anderson and MediConnect provided false information to Mr. Trehan for the purpose of inducing him to agree to the Trehan Buyout on artificially low and unfair terms.

55. Mr. Trehan justifiably relied on Ms. Anderson and MediConnect's representations and thereby agreed to a deflated buyout.

56. Ms. Anderson and MediConnect's conduct harmed Mr. Trehan in an amount of approximately $64 million.

## **FOURTH CAUSE OF ACTION**
(Violation of SEC Rule 10b-5)

57. Plaintiff incorporates by this reference all other allegations set forth herein.

58. Security Exchange Commission Rule 10b-5 governs employment of manipulative and deceptive practices in connection with the sale of securities, which makes it unlawful for any person, directly or indirectly, to employ any device, scheme, or artifice to defraud; to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

59. The Trehan Buyout constitutes a "sale of securities."

60. On October 13, 2010, Ms. Anderson and MediConnect falsely represented to Mr. Trehan that no person or entity expressed any interest in acquiring, merging with, or investing in MediConnect, other than those limited persons or entities identified *supra*.

61. Verisk Analytics' interest in acquiring, merging with, or investing in MediConnect constitutes material information to the Trehan Buyout.

62. Ms. Anderson and MediConnect used the facilities of interstate commerce to deliver their misrepresentations to Mr. Trehan and to transfer funds in consummation of the Trehan Buyout, all in furtherance of their scheme.

63. Ms. Anderson and MediConnect's representations to Mr. Trehan were made in connection with the Trehan Buyout and done with the intent to deceive, manipulate, or defraud Mr. Trehan.

64. Mr. Trehan reasonably relied on Ms. Anderson and MediConnect's misrepresentations in determining whether to agree to a buyout of the Shares and in valuing the Shares.

65. In direct and reasonable reliance upon Ms. Anderson and MediConnect's false representations and material omissions, Mr. Trehan suffered damages in an amount no less than $64 million.

66. Ms. Anderson and MediConnect thereby violated Rule 10b-5 as they deceived and/or defrauded Mr. Trehan by failing to disclose material facts needed to accurately value the Shares and negotiate the Trehan Buyout.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Ms. Anderson and MediConnect, jointly and severally, as follows:

    A.    Damages in an amount to be proven at trial but not less than $64 million;

    B.    Punitive damages in an amount no less than $128 million;

    C.    Disgorgement of all profits earned through the use and investment of Mr. Trehan's funds;

    D.    An award of attorney's fees and costs;

    E.    Pre- and post-judgment interest at the highest rate allowed by law;

    F.    An order that Mr. Trehan's funds be held in constructive trust; and

    G.    Any other legal or equitable relief the Court deems to be just or equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 9th day of October, 2013.

WOOD BALMFORTH LLC

/s/ Stephen Q. Wood
Mary Anne Q. Wood
Stephen Q. Wood
*Attorneys for Plaintiff*